UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA DUNCAN,<br><br>          Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKZI, Acting Commissioner of Social Security<br><br>          Defendant. | Case No. 2:21-cv-00204-JDP (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15 & 18 |

Plaintiff challenges the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Both parties have moved for summary judgment. ECF Nos. 15 & 18. As set forth below, the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, and so the court will deny plaintiff's motion for summary judgment and grant the Commissioner's motion.

**Standard of Review**

An Administrative Law Judge's ("ALJ") decision denying an application for disability benefits will be upheld if it is supported by substantial evidence in the record and the correct legal standards were applied. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such

1

relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court will not affirm on grounds upon which the ALJ did not rely. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

A five-step sequential evaluation process is used in assessing eligibility for Social Security disability benefits. Under this process the ALJ is required to determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment (or combination of impairments) that qualifies as severe; (3) whether any of the claimant's impairments meet or medically equal the severity of one of the impairments in 20 C.F.R., Pt. 404, Subpt. P, App. 1; (4) whether the claimant can perform past relevant work; and (5) whether the claimant can perform other specified types of work. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018). The claimant bears the burden of proof for the first four steps of the inquiry, while the Commissioner bears the burden at the final step. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

**Background**

Plaintiff filed applications for DIB and SSI, alleging disability beginning September 10, 2014. Administrative Record ("AR") 274-89. After her application was denied initially and upon reconsideration, plaintiff appeared and testified at a hearing before an ALJ. AR 110-48, 216-20, 223-32. On May 15, 2020, the ALJ issued a decision finding that plaintiff was not disabled. AR 15-35. Specifically, the ALJ found that:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since

September 10, 2014, the alleged onset date.

3. The claimant has the following severe impairments: cervical and lumbar degenerative disc disease, right upper extremity tendonitis and carpal tunnel syndrome, asthma, hidradenitis suppurativa, obesity, depression, anxiety, and trauma disorder.

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.976(b) except the claimant could stand and walk for six hours; the claimant could sit for six hours; the claimant could occasionally climb ramps and stairs; the claimant could never climb ladders, ropes, or scaffolds; the claimant could occasionally balance[,] stoop, kneel, crouch, or crawl; the claimant could frequently reach, handle, finger, and feel with the dominant hand; the claimant should not have concentrated exposure to extreme temperatures, humidity, wetness, pulmonary irritants, or hazards; the claimant is limited to simple routine work, in a workplace with no more than occasional workplace changes; and the claimant could have occasional superficial contact with coworkers, and brief, superficial contact with the public.

\* \* \*

6. The claimant has no past relevant work.

\* \* \*

7. The claimant was born [in] 1980 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue because the claimant does not have past relevant work.

10. Considering the claimant's age, education, work experience, and

>    residual functional capacity, there are jobs that exist in significant
>    numbers in the national economy that the claimant can perform.
>
>    * * *
>
>    11. The claimant has not been under a disability, as defined in the
>    Social Security Act, from September 10, 2014, through the date of
>    this decision.

AR 18-35 (regulatory citations omitted).

Plaintiff requested review by the Appeals Council, which denied the request. AR 1-5. She now seeks judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**Analysis**

Plaintiff argues that the ALJ made three principal errors. First, she argues that the ALJ did not fully develop the record regarding her hidradenitis suppurativa and complex regional pain syndrome ("CRPS"). ECF No. 15 at 5-11. Second, she contends that the ALJ improperly rejected the opinion of her treating therapist, Karin Shelton. *Id*. at 14. Third, she argues that the ALJ erred in evaluating her subjective complaints. *Id*. at 14-17.

**I.     Hidradenitis Suppurativa and Complex Regional Pain Syndrome**

Plaintiff argues that the ALJ erred in not fully developing the record regarding her hidradenitis suppurativa[1] and CRPS. ECF No. 15 at 5. She contends that these impairments "are potentially so disabling that this case should be remanded with directions for consultative examinations." *Id*.

An ALJ has a duty "to fully and fairly develop the record and to assure the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). But a duty to further develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)

---

[1] Hidradenitis suppurativa "is a condition that causes small, painful lumps to form under the skin." Mayo Clinic, *Hidradenitis suppurativa*, https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306 (last visited Sept. 30, 2022).

("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."). "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

With respect to hidradenitis suppurativa, plaintiff argues that her testimony demonstrates that "this is a serious impairment, quite likely disabling in itself."[2] ECF No. 15 at 5-7. Plaintiff, however, does not explain how her testimony either creates ambiguity or renders the record insufficient. She also makes no attempt to explain why an additional consultative examination is needed for proper evaluation of this condition. Plaintiff has already undergone two consultative examinations. In January 2018, Dr. Satish Sharma examined plaintiff and concluded that her impairments, including hidradenitis suppurative, limited her to light work involving occasional postural activities and frequent manipulative activities.[3] AR 810. Six months later, plaintiff underwent a consultative examination with Dr. Sanford Selcon, who found that plaintiff could perform a full range of light work. AR 916-20. The record also contains opinions from two state agency physicians, Drs. Pancho and Bradus, both of whom found that plaintiff could perform light work with certain postural, manipulative, and environmental limitations. AR 159-61, 195-

---

[2] As discussed below, the ALJ concluded that plaintiff's allegations concerning her physical limitations were not consistent with the medical record, which reflected fairly unremarkable symptoms and conservative treatment. AR 27. The ALJ's determination is sufficiently supported with respect to plaintiff's hidradenitis suppurativa. Although plaintiff alleged that this impairment resulted in her being bedridden, sometimes for up to a week, the record shows she sought treatment for the condition on only one occasion during the relevant period. *See* AR 1436-37 (emergency room record documenting lesions on ear and back of the head, which were "conservatively treat[ed] with Avelox").

[3] Plaintiff appears to argue that Dr. Sharma's report undermines the ALJ's step-three finding that she did not meet the listing for hidradenitis suppurativa. ECF No. 15 at 5-7. The ALJ found that plaintiff did not meet Listing 8.06 because "there is no evidence of extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least three months despite continuing treatment as prescribed." AR 18-19; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (providing that to meet Listing 8.06, the claimant must have "[h]idradenitis suppurativa, with extensive skin lesions involving both axillae, both inguinal areas, or the perineum that persist for at least 3 months despite continuing treatment as prescribed"). Although Dr. Sharma's report noted plaintiff's reported history of "lesions in her axilla and groin," his examination does not note any complications from hidradenitis suppurativa.

98. Given that four physicians assessed plaintiff's physical limitations and that plaintiff has not explained the need for more, the ALJ was not required to further develop the record regarding plaintiff's hidradenitis suppurativa. *See Joseph P. v. Kijakazi*, No. 5:21-cv-1075-GJS, 2022 WL 4109452, * 6 (C.D. Cal. Sept. 8, 2022) (finding that the record was adequate to evaluate the severity of symptoms because it "included an unambiguous consultative examination [and] two state reviewing physicians' opinions expressly discussing Plaintiff's functional limitations").

Likewise, there is no merit to plaintiff's argument that further record development was needed regarding his CRPS. This argument seems to rest on speculation derived from one of Dr. Selcon's examination findings. Specifically, plaintiff notes that Dr. Selcon found that plaintiff had "hyper paresthesias of her entire right upper extremity including her hand." ECF No. 15 at 8; *see* AR 918. She contends that since Dr. Selcon was aware of her medical history, which included four surgeries to her right hand, his "exam finding of hyperparesthesias implies painful sensitivity disproportionate to that surgical history." *Id*. From this, plaintiff suggests that her CRPS could result in greater manipulative limitations. *Id*. Not only does plaintiff's argument rest on speculation, it ignores Dr. Selcon's opinion that plaintiff had no manipulative limitations despite pain in her right upper extremity.[4]

## II. LCSW Shelton's Opinion

Plaintiff argues that the ALJ erred in rejecting the opinion of her treating therapist, Karin Shelton, L.C.S.W. ECF No. 15 at 11-4. Under the Commissioner's revised regulations, treating physicians' opinions are no longer entitled to the deference that they enjoyed under the prior regulations' "physician hierarchy."[5] *See Wood v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Consequently, an ALJ is no longer required to provide "specific and legitimate" reasons for rejecting a treating opinion. *See Id*.

Instead, the ALJ is to evaluate each medical opinion's persuasiveness based on

---

[4] Plaintiff contends that the absence of right-hand limitations from Dr. Selcon's report "surely was a mistake," but offers no support for this assertion. ECF No. 15 at 8.

[5] The Commissioner's revised regulations apply to applications filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Plaintiff's application was filed on December 11, 2017. AR 274-75.

(1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) the provider's specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5); 416.920c(a), (c)(1)-(5). While all factors must be considered, "supportability" and "consistency" are the primary considerations. 20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, at 32 F.4th 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

Under current regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787. However, the ALJ is still required to "provide a coherent explanation of her reasoning" so that judicial review may be effective. *Sam-Chankhiao v. Kijakazi*, 2022 WL 4222617, *3 (E.D. Cal. Sep. 13, 2022) (citing *Hardy v. Comm'r Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

On March 5, 2020, Ms. Shelton, L.C.S.W., completed a mental impairment questionnaire in which she opined that plaintiff had a good ability to set goals and to make plans independently, as well as to understand, remember, and carry out detailed instructions. AR 1706. She also found that plaintiff had a good ability to interact appropriately with the general public, to maintain socially appropriate behavior, and to adhere to basic standards of neatness. *Id*. However, she found that plaintiff had marked limitations in performing daily activities and in maintaining social functioning. AR 1707. Ms. Shelton found that plaintiff would often experience deficiencies in concentration, persistence, or pace preventing her from completing tasks in a timely manner. *Id*. And she opined that plaintiff would likely experience three or more monthly episodes of deterioration or decompensation. *Id*.

The ALJ concluded that Ms. Shelton's opinion was not persuasive because it was unsupported and inconsistent with the medical record. AR 32. The ALJ provided four specific

reasons for reaching this conclusion, each supported by substantial evidence. *Id*. First, the ALJ found that Ms. Shelton's opinion that plaintiff had marked limitations in social functioning and in performing daily activities was inconsistent with her opinion that plaintiff had a good ability to interact appropriately with the general public and to maintain socially appropriate behavior. AR 32, 1706-07. Second, the ALJ concluded that the marked limitations assessed by Ms. Shelton were inconsistent with plaintiff's reported daily activities. AR 32. As discussed by the ALJ, plaintiff reported that she performs housework, cooks meals, cares for her children, shops for groceries, and manages her finances. AR 19, 27-31, 324-30, 801-07. While these activities are not extensive, the ALJ permissibly concluded they were inconsistent with the marked limitations assessed by Ms. Shelton. Third, the ALJ appropriately concluded that Ms. Shelton's opinion was not supported by the medical record, which showed improvement in her symptoms with medication. AR 27, 657, 786, 812. Finally, the ALJ found that Ms. Shelton's opinion was not consistent with assessments provided by Michelina Regazzi, Ph.D., and Ryan Guton, Ph.D, both of whom opined that plaintiff was not as limited as Ms. Shelton had concluded. AR 30-32, 803-04, 912-13.

### III.     Plaintiff's Subjective Complaints

Finally, plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting her allegations regarding the degree of her limitations. ECF No. 15 at 14-17. "[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). If the ALJ finds a plaintiff's pain testimony not credible, the ALJ "must specifically make findings that support this conclusion," and the findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the] claimant's testimony." *Id.* (internal quotation marks omitted). "If there is no affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)

(citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021) (noting that the ALJ can reject the plaintiff's testimony about the severity of symptoms only by offering specific, clear, and convincing reasons).

As the ALJ recounted in her opinion, plaintiff testified that she drives, cares for her cat, runs errands, prepares meals, dresses herself, and takes care of foster children. AR 117-20. She also testified that she picks up the children from school, takes them to doctors' and dentists' appointments and parent-teacher conferences, and teaches them how to cook. AR 137, 139-40. The ALJ permissibly concluded that plaintiff's testimony regarding household chores and caring for children was not reasonably consistent with her subjective testimony of disabling pain. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (holding that the claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of [the claimant's] ability to work"); *Clark v. Astrue*, 2012 WL 423635, at *6-7 (E.D. Cal. Feb. 8, 2012) (concluding that the ALJ properly discounted the claimant's subjective symptoms based on daily activities of caring for a disabled child, completing household chores, and other activities).

Moreover, the medical treatments for plaintiff's impairments were conservative, consisting primarily of medications, and she reported that her conditions were improving or were responsive to treatment. AR 27, 657, 812. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The credibility determination was adequately supported and will be upheld.

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment, ECF No. 15, is denied.

2. The Commissioner's cross-motion for summary judgment, ECF No. 18, is granted.

3. The Clerk of Court is directed to enter judgment in the Commissioner's favor.

IT IS SO ORDERED.


Dated:   September 30, 2022                     _____
                                                JEREMY D. PETERSON
                                                UNITED STATES MAGISTRATE JUDGE